HOFFMAN *v.* HOFFMAN.

(*Supreme Court, General Term, Fifth Department.* April 13, 1892.)

1. LANDLORD AND TENANT—ESTOPPEL TO DENY LANDLORD'S TITLE.

In an action for the possession of land, plaintiff relied on a contract in which defendant agreed to till the land described for one year, and wherein it was agreed that defendant "is to occupy the upper house, and is to have the use of the garden, and also his fire-wood," etc. In his answer defendant denied that plaintiff owned all the land described, and alleged that the house where he lived, together with about two acres of land used as a garden, belonged to him. Defendant relied on an oral transfer of the land to him by his father several years prior to the execution of the deed under which plaintiff claimed title. *Held,* that the contract between plaintiff and defendant did not establish the relation of landlord and tenant in the house and garden, so as to estop defendant, under Code Civil Proc. § 373, to deny plaintiff's title.

2. WITNESS—COMPETENCY—TRANSACTIONS WITH DECEDENTS.

Under Code Civil Proc. § 829, in an action for the possession of land, where defendant claimed title under a parol agreement with his deceased father, who was plaintiff's grantor, it was error for defendant's wife to testify to a conversation between decedent and defendant in relation to the transfer of the property.

Appeal from Cayuga county court.

Summary proceedings for the possession of land by Abbie H. Hoffman against John D. Hoffman. Defendant had judgment entered on a verdict of a jury, and plaintiff appeals. Reversed.

Argued before DWIGHT, P. J., and MACOMBER and LEWIS, JJ.

*James Wright,* for appellant. *A. J. Parker,* for respondent.

MACOMBER, J. This proceeding was instituted by the plaintiff under section 28 of 2 Rev. St. p. 513, as amended by chapter 471 of the Laws of 1874. This amendment was made so that the statute would apply to croppers, or persons working land on shares. The agreement upon which the plaintiff relies was made the 11th day of March, 1890, between her and the defendant. By its terms the defendant agreed properly to till and plow the lands of the plaintiff, which were described as being situated in the town of Conquest, on lot 17, except a certain portion of that lot, which had been sown to wheat,

and certain meadow lands.  The agreement set forth particularly the proportion in which the crops raised should be divided between the parties. There was in this writing the following clause: "The first party [the defendant] is to occupy the upper house, and is to have the use of the garden, and also his firewood for one year of such timber as is down, dead, or decaying," etc.  The answer was, in substance, a denial of the allegation of the petition that the plaintiff owned all of the lands; and it alleged that the house where the defendant lived, together with about two acres of land used as a garden, belonged to him.

No question seems to be involved on this appeal touching any part of lot 17, except this house and garden.  The right of the defendant to retain possession of this property is based upon an alleged oral transfer of the land to him by his father, 12 or 13 years ago, long prior to the execution to the plaintiff of the deed under which she claims.  Evidence (much of it of a very inconclusive character) was given upon the trial, designed to show that the defendant's father offered to and did propose to him that he should build a house upon the land in question, and occupy and have it as his own; and that thereupon the defendant went into possession, and, largely through his own personal efforts and those of his wife, constructed the house, there having been paid for carpenter work by the father a sum not much exceeding $100. Other testimony was offered to the effect that the defendant's father, after this time, stated to sundry persons that the property belonged to the defendant.  It is contended by the appellant, however, that the defendant is conclusively estopped, by the agreement which he entered into with her, thereafter to dispute the plaintiff's title to the whole of this land.  It is true that the clause of the agreement above quoted has a tendency to lead one to the conclusion that the defendant did not, at the time of the execution of the agreement, rely upon the title to the house and garden which he now sets up.  Yet we are unable to say that the entering into that agreement worked such an estoppel against him as to preclude him from asserting his true title, notwithstanding the existence of that agreement.  Where the relation of landlord and tenant exists, the possession of the tenant is deemed to be the possession of the landlord.  Code Civil Proc. § 373.  But it is only in cases where the conventional relation of landlord and tenant exists that the tenant is deemed to be estopped to allege against the landlord his own right of possession under a title adverse to the former.  The principle finds its origin in the fact that the lessee conclusively acknowledges title in his landlord when he accepts a lease of the property, with an agreement to pay rent therefor; but it does not exist where such conventional relation of landlord and tenant does not exist, as is the case now before us.  *Sands* v. *Hughes*, 53 N. Y. 287.  While, therefore, the clause above mentioned, contained in this contract, the whole of which was shown to have been actually written by the defendant himself, is a strong circumstance against the defendant's present contention, yet it does not appear to be a conclusive legal obstacle to the defense which has been set up in the answer.

An error, however, was committed upon the trial, which we think must lead to a reversal of the order appealed from.  The defendant's wife, Nancy M. Hoffman, was called as a witness, and under suitable objection and exception was permitted to testify that she heard a conversation between the defendant and Matthias Hoffman, the defendant's father, in reference to this property, in which she says she took no part.  She then proceeded to give testimony to the original transaction between her husband and his father. which must have had some influence upon the determination of the jury. This court has already decided in the case of *Erwin* v. *Erwin*, (Sup.) 7 N, Y. Supp. 365, that such evidence was incompetent under section 829 of the Code of Civil Procedure, and that its admission was sufficient error to lead to the reversal of the judgment.  Adherence to that authority leads us to the

conclusion that this evidence, adduced before the learned special county judge, was incompetent, and that for such error there should be a reversal of the order, and a new trial. Order of the special county judge of Cayuga county reversed, and a rehearing had before him, with costs of this appeal, to abide the event. All concur.